Robb, J.
{¶1} Defendant-Appellant Rodney Curtis appeals from his three drug trafficking and two drug possession convictions entered in Belmont County Common Pleas Court. Four issues are raised in this appeal. First, Appellant argues the trial court erred in denying the motion to suppress; he contends there was no probable cause to obtain a search warrant. Next, he asserts when it was discovered during trial that the state failed to disclose a recorded interview between the investigator from the State of Ohio Board of Pharmacy and the confidential informant's mother, the trial court should have either granted his motion for mistrial or his motion for continuance. Third, Appellant argues the trial court erred when it denied his request for a jury instruction on the affirmative defense of entrapment. Last, Appellant contends the trial court erred during sentencing when it failed to advise him of the possible penalties for violating the terms of his community control sanction. For the reasons enumerated below, all arguments are meritless and the convictions are affirmed.
*965 Statement of the Facts and Case
{¶2} Appellant is a urologist with an office in St. Clairsville, Ohio. Ashley Padgett, who has a degree in surgical technology, worked for Appellant for approximately two years. Her employment with him ended the last week of March 2016. The two were romantically involved for a period of time while she was working for him; their relationship ended in December 2015.
{¶3} When Padgett left his employment she either took a prescription pad or she was given one by Appellant. She wrote approximately 24 prescriptions for Percocet and used those scripts to buy Percocet from local pharmacies. This eventually caused the State of Ohio Board of Pharmacy to investigate. In April 2017, she was interviewed by Leslie Arnold from the Pharmacy Board and Officers Starkey and West from the Martins Ferry Police Department and the Belmont County Major Crimes Unit. Padgett admitted to writing the scripts and she was informed she would be charged for that criminal activity.
{¶4} During the interview, Padgett was asked about becoming a confidential informant and asked if she would try to buy drugs from Appellant. She agreed to become a confidential informant; she indicated Appellant knew about her drug problem and while she was working for him he had given her Adderall.
{¶5} Two controlled buys occurred and were recorded. The first buy occurred on April 26, 2016 at Appellant's home in St. Clairsville, Ohio. She bought three Adderall pills from Appellant for $ 36. The following day, April 27, 2016, Padgett attempted another controlled buy from Appellant for five pills for $ 60. This time it was supposed to occur at his office, but ended up occurring at his residence. Appellant did not have the agreed amount of drugs, so he gave her one Adderall and half a Suboxone. Appellant did not take any money from Padgett for these pills.
{¶6} These controlled buys provided the basis for a warrant to search Appellant's residence. The search occurred on April 28, 2017. During the search an Ice Breaker's case was found containing pills. In total eight pink pills, Adderall (Amphetamine ), and a piece of one white pill, Suboxone (Buprenorphine ) were found.
{¶7} As a result of the investigation, controlled purchases, and the search of Appellant's residence, Appellant was indicted for three counts of trafficking, two in violation of R.C. 2925.03(A)(1)(C)(1)(a) and one in violation of R.C. 2925.02(A)(1)(C)(2)(a). The first two were fourth-degree felonies. The last one was a fifth-degree felony. Appellant was also indicted for two counts of possession, one in violation of R.C. 2925.11(A)(C)(1)(a), a fifth-degree felony and one in violation of R.C. 2925.11(A)(C)(2)(a), a first-degree misdemeanor.
{¶8} Prior to trial, Appellant moved to suppress the items found during the search of the residence arguing the officers failed to obtain a valid search warrant. 12/18/17 Motion to Suppress. Following a hearing, the motion was denied. 1/11/18 Suppression Tr.; 2/6/18 Findings of Fact and Conclusions of Law on Denial of Motion to Suppress.
{¶9} At trial, Appellant stipulated he gave the drugs to Padgett on April 26 and 27, 2017. 1/27/18 Trial Tr. 346-347. Appellant sought to prove the affirmative defense of entrapment.
{¶10} At trial, Padgett testified that while she did not have a physical relationship with Appellant after she quit working for him in March 2016, she continued to communicate with him. Padgett claimed after she quit working for Appellant she purchased Adderall from him. She additionally *966 stated that in January or February 2014, when she was working for him, Appellant introduced her to the drug and gave her the drug while she was working for him. The recordings of the controlled purchases were played for the jury.
{¶11} The jury found Appellant guilty of all offenses. The court sentenced him to an aggregate sentence of five years of community control to include a six-month jail sentence and a six-month sentence at Eastern Ohio Correction Center. 2/8/18 J.E.; 2/8/18 Sentencing Tr. 6-9. He received five years of community control which included a six-month jail sentence and a six-month sentence at Eastern Ohio Correction Center for each of the trafficking convictions and for the fifth-degree felony possession conviction. 2/8/18 J.E.; 2/8/18 Sentencing Tr. 6-7. For the misdemeanor possession conviction he received a six-month jail sentence. 2/8/18 J.E.; 2/8/18 Sentencing Tr. 9. The trial court ordered the sentences to be served concurrent to each other. 2/8/18 J.E.; 2/8/18 Sentencing Tr. 7. At the sentencing hearing and in the sentencing judgment entry the trial court notified Appellant that if he violated community control he would be sentenced to an 18-month prison term. 2/8/18 J.E.; 2/8/18 Sentencing Tr. 7.
{¶12} Appellant timely appealed his conviction.
First Assignment of Error
"The trial court erred by overruling Defendant-Appellant's motion to suppress because there was no probable cause to obtain a search warrant."
{¶13} Appellant contends the basis for the search warrant was statements made by Ashley Padgett to law enforcement and the two controlled buys. He contends that when law enforcement requested the search warrant it withheld facts in order to obtain the warrant. For instance, he claims the issuing judge was not informed that Padgett had not had a romantic relationship with Appellant for over a year when the controlled purchase was arranged. Likewise, he contends the court was not informed Padgett allegedly had no contact with Appellant for over a year prior to the controlled buys. He asserts the court was not told of the statements law enforcement personnel told Padgett to use to get Appellant to sell her the drugs; the statements were to use his love for her and that she could convince him to take this risk that was so significant. Appellant argues the withholding of all this information indicates the search warrant was not based on probable cause.
{¶14} The Fourth Amendment of the United States Constitution provides that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment, however, does not contain any "provision expressly precluding the use of evidence obtained in violation of its commands." United States v. Leon , 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Rather, the exclusionary rule was judicially created to safeguard Fourth Amendment rights. State v. Hoffman , 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 24, quoting United States v. Calandra , 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Consequently, evidence seized in violation of the Fourth Amendment may be suppressed pursuant to the exclusionary rule.
{¶15} Pursuant to Ohio Crim.R. 41, a request for a search warrant must be accompanied by a sworn affidavit "establishing the grounds for issuing the warrant." Crim.R. 41(C)(1). A search warrant will be issued if the judge finds, based on the information in the affidavit, "probable *967 cause for the search exists." Crim.R. 41(C)(2).
{¶16} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the judge or magistrate issuing the warrant is to simply "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. George , 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting Illinois v. Gates , 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issuing judge or magistrate is confined to the averments contained in the affidavit supporting the issuance of the search warrant. State v. Swift , 12th Dist. No. CA2013-08-161, 2014-Ohio-2004, 2014 WL 1896483, ¶ 16. Therefore, it is "essential that an affidavit for a search warrant include facts establishing probable cause that the items sought to be searched for and seized are related to the commission of some crime." State v. J.A.C. , 12th Dist. Nos. CA2017-04-044 and CA2017-04-045, 2018-Ohio-361, 2018 WL 582332, ¶ 18.
{¶17} As the reviewing court, we do not conduct a de novo review as to whether the search warrant affidavit provided sufficient probable cause. George , 45 Ohio St.3d 325, 544 N.E.2d 640 at paragraph two of the syllabus. Rather, this court's limited duty is to ensure the judge or magistrate issuing the search warrant had a substantial basis for concluding probable cause existed based on the information contained within the four corners of the affidavit. Id . See also Illinois v. Gates , 462 U.S. at 238-239, 103 S.Ct. 2317. In making this determination, the reviewing courts must examine the totality of the circumstances. State v. Jones , 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 13. A reviewing court is required to afford great deference to the judge or magistrate's determination of probable cause "and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id . at ¶ 14, quoting George , 45 Ohio St.3d 325, 544 N.E.2d 640 at paragraph two of the syllabus.
{¶18} The affidavit used to obtain the search warrant was admitted as an exhibit at the suppression hearing. That affidavit solely relied on the two controlled drug transactions and does not reference any statements Padgett made to the officers. It also does not indicate the officer told her what statements she should say to Appellant to get him to sell her drugs. The affidavit does not indicate Padgett's previous contact with Appellant or their prior relationship. It does not state if she previously obtained drugs from Appellant prior to the controlled buys.
{¶19} During the suppression hearing, counsel for Appellant asked Officer Starkey if he knew if Padgett obtained drugs from Appellant during the year prior to the controlled buys. 1/11/18 Suppression Tr. 41-42. He stated he did not know. 1/11/18 Suppression Tr. 41-42. Officer Starkey was also questioned about and confirmed that he told Padgett it was important for her to get Appellant to talk about giving her drugs during the controlled buys. 1/11/18 Suppression Tr. 42-43. The recorded controlled buys and Padgett's interview with law enforcement were played for the court.
{¶20} In overruling the motion to suppress, the trial court explained the controlled buys were important and provided sufficient probable cause for the search warrant:
*968 Reliable information obtained from credible informants suffices to establish probable cause. There must be a substantial basis however, for believing the source of the hearsay to be credible, and that there is a factual basis for the information furnished.
Now, the officers - the officer, singular, who prepared the Affidavit, and the reviewing county court judge who issued the arrest warrant based upon that Affidavit, were not relying merely upon hearsay of the confidential informant. This is not a situation where a confidential informant tells a police officer X, Y and Z, and the police officers uses X, Y and Z in his or her Affidavit to support an arrest, search or whatever. This is a police officer preparing an Affidavit and the reviewing court, county court judge, issuing the arrest warrant after his own investigation, with verified and controlled telephone conversations and buys.
If you look at the Affidavit, it uses the word "controlled", I believe, four times. That's upon which the officer relied. That's upon which the county court judge relied. There were numerous safeguards in place to make certain; it almost made it irrelevant whether the confidential informant was reliable or dependable upon what he or she - she in this case - had told the officers. Safeguards, multiple ones, as indicated were in place.
Based upon the totality of the circumstances, the motion to suppress evidence in this case is respectfully, very respectfully, overruled, but nevertheless overruled.
1/11/18 Suppression Tr. 59-60.
{¶21} This reasoning is logical and indicates the trial court had a substantial basis for concluding probable cause existed based on the information contained within the four corners of the affidavit. The fact that the affidavit did not state whether Padgett bought drugs or had any physical contact with Appellant for a year prior to the controlled buys is inconsequential. The controlled buys occurred; Appellant sold or gave her drugs without a prescription during these transactions. This was sufficient probable cause for the search warrant.
{¶22} Furthermore, law enforcement telling Padgett what to say and to use her relationship with Appellant to have him sell her drugs is typical in a controlled drug transaction. Confidential informants are used for controlled buys because drug dealers typically do not sell drugs to a person they do not know for fear it is an undercover police officer. See State v. Altman , 7th Dist. No. 12 CO 42, 2013-Ohio-5883, 2013 WL 6921497, ¶ 4-6 ; State v. Persohn , 7th Dist. No. 11 CO 37, 2012-Ohio-6091, 2012 WL 6679921, ¶ 26 (testimony from the officer explaining why confidential informants are used). Using a previous relationship to obtain drugs from a known distributor and law enforcement indicating what needs to be said or seen in the video recording for purposes of building a case are how controlled buys occur.
{¶23} Appellant's arguments about the timing of the controlled buys and law enforcement telling Padgett to use her relationship to get Appellant to take the "significant risk" to sell her drugs may support his affirmative defense of entrapment, but it does not negate the fact that the controlled buys occurred. Those controlled buys provided sufficient probable cause for the search warrant. Accordingly, this assignment of error is meritless.
Second Assignment of Error
"The trial court erred by overruling Defendant-Appellant's motion to continue or grant a mistrial during trial when it was discovered that the State of Ohio failed to disclose a recorded interview that *969 served as an essential part of the investigation and charges against Defendant-Appellant."
{¶24} During Officer Starkey's testimony Appellant's counsel asked the officer if there was any documentation or recordings of Sherry Myers' conversations with Leslie Arnold from the State Pharmacy Board. 1/27/18 Trial Tr. 281. He responded he believed there was a recording or documentation. 1/27/18 Trial Tr. 281-282. Sherry Myers is Padgett's mother and Appellant contends Myers talked to Arnold prior to law enforcement's interview with Padgett where she agreed to be a confidential informant.
{¶25} After Officer Starkey indicated he believed there was a recording or documentation, a sidebar occurred. Appellant's counsel informed the court they did not receive any information regarding that interview. 1/27/18 Trial Tr. 282. The state argued it was not part of its case, it was part of the administrative investigation, and was not relevant in this case. 1/27/18 Trial Tr. 282. Appellant's counsel countered asserting he did not know whether it was relevant or not because he did not receive it and had not reviewed it. 1/27/18 Trial Tr. 282. The trial court indicated the case would proceed. Appellant moved for a continuance or mistrial. 1/27/18 Trial Tr. 282. The trial court overruled the motions. 1/27/18 Trial Tr. 282.
{¶26} Appellant contends either the motion for continuance or mistrial should have been granted because the failure to disclose the information regarding the conversation between Arnold and Myers was a Brady violation.
{¶27} A trial court has broad discretion in determining whether to grant a continuance and absent an abuse of discretion will not be reversed. State v. Myers , 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138 ; State v. Unger , 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Furthermore, a defendant must show that she or he was prejudiced by the trial court's failure to grant a requested continuance. Myers . Similarly, the denial of a motion for mistrial is also reviewed under an abuse of discretion standard of review. State v. Treesh , 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). Abuse of discretion " 'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
{¶28} As stated above, this case involves an alleged Brady violation. In Brady v. Maryland , the United States Supreme Court held a defendant is denied due process when the prosecution fails, upon the request of the defense, to disclose material evidence that is favorable to the accused. Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley , 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
{¶29} In this instance there were discovery requests from Appellant to disclose all material evidence favorable to Appellant. The State admitted at trial the information regarding the Arnold-Myers conversation was not disclosed; the state did not believe it was part of its investigation and believed it was irrelevant.
{¶30} Appellant asserts the information provided to Arnold by Myers was the catalyst to investigate Appellant. He asserts the conversation could have been used to support his entrapment defense. He claims *970 he was committed to the defense of entrapment and the jury could have easily seen this case as a mother protecting her daughter by falsely accusing Appellant and causing an investigation into him to occur.
{¶31} Despite Appellant's insistence to the contrary, it does not appear Appellant was committed to the entrapment defense. It was not until the middle of Ashley Padgett's testimony, which was a little over half way through the trial that Appellant stipulated he gave Padgett the drugs. Prior to that point, the questions asked by counsel partially went to the entrapment defense, but also insinuated Padgett had the drugs and there was no evidence Appellant gave her the drugs. It is clear from the record the trial court knew there was a possibility of pursuing an entrapment defense; multiple statements between defense counsel and the trial court confirmed this and the trial court even indicated to counsel that it was getting close to the point for it to decide whether to pursue the affirmative defense. However, at the point the motion for a mistrial or in the alternative motion to continue was made, there was no statement from Appellant that he was definitively pursuing the entrapment defense.
{¶32} Regardless, even if he was committed to the defense, Padgett's testimony indicated he was predisposed to commit the crime; he had previous involvement in a similar activity and was not an innocent person who was implanted with the idea by government officials. Padgett stated Appellant had sold her drugs at various times from the fall of 2016 through January 2017, which was prior to the two controlled buys. 1/27/18 Trial Tr. 352, 355, 364. During one of the controlled buys, Appellant stated he gave Padgett Adderall intermittently while she was working for him. 1/27/18 Trial Tr. 358. Padgett also testified that during her employment with Appellant, she would buy Adderall from the same person he did and Appellant would additionally give her some of the ones he bought. 1/27/18 Trial Tr. 364, 366. At the last controlled buy Padgett asked Appellant to write her a prescription for Adderall. He refused, but then gave her an Adderall pill. 1/27/18 Trial Tr. 369. These statements and actions indicate Appellant was predisposed and thus, the entrapment defense would not be applicable.
{¶33} Consequently, the record does not suggest the Myers-Arnold conversation was material; there is not a probability sufficient to undermine the confidence in the outcome. It is unclear how the Myers-Arnold conversation would alter the above testimony and help Appellant's entrapment defense. The trial court did not abuse its discretion in denying the motion for mistrial or in the alternative continuance. This assignment of error is meritless.
Third Assignment of Error
"The trial court erred by failing to instruct the jury on the defense of entrapment."
{¶34} Appellant requested a jury instruction on the affirmative defense of entrapment. The trial court denied the request.
{¶35} Generally, jury instructions are matters left to the sound discretion of the trial court. State v. Guster , 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). When reviewing a lower court's decision not to instruct a jury in a certain manner, an appellate court should apply the abuse of discretion standard. State v. Wolons , 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).
{¶36} Under Ohio Crim.R. 30(A), a trial court is required to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder."
*971 State v. Comen , 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus; State v. Joy , 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995) (Jury instructions "must be given when they are correct, pertinent, and timely presented."). A trial court does not err in failing to instruct the jury on an affirmative defense where the evidence is insufficient to support the instruction. State v. Palmer , 80 Ohio St.3d 543, 564, 687 N.E.2d 685 (1997). In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. Id .
{¶37} Appellant argues he presented sufficient evidence of entrapment. He contends law enforcement had Padgett invade his life after a significant amount of time had passed when there was no romantic relationship between the two of them. The law enforcement officers instructed Padgett to use his love for her to get him to sell her drugs; she was told what to say and how to convince Appellant to give her drugs. Appellant contends the trial court's reasoning for denying the request for an entrapment instruction implies the trial court believed it was necessary for Appellant to testify to dispute the testimony against him.
{¶38} Entrapment is an affirmative defense which a defendant has the burden of proving by a preponderance of the evidence. R.C. 2901.05(A). Entrapment exists "where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." State v. Doran , 5 Ohio St.3d 187, 449 N.E.2d 1295 (1983), paragraph one of the syllabus. However, there is no entrapment when government officials "merely afford opportunities or facilities for the commission of the offense" to a criminal defendant who was predisposed to commit the offense. Id . at 192, 449 N.E.2d 1295.
{¶39} In Doran , the Ohio Supreme Court considered whether Ohio should define entrapment pursuant to the "subjective" or "objective" test. Id . at 190, 449 N.E.2d 1295. The Court explained "the subjective test of entrapment focuses upon the predisposition of the accused to commit an offense." Id . The objective test, however, "focuses upon the degree of inducement utilized by law enforcement officials and whether an ordinary law-abiding citizen would have been induced to commit an offense." Id . The Ohio Supreme Court adopted the "subjective" test, finding it more reliable because it "properly emphasizes the accused's criminal culpability and not the culpability of the police officer." Id . at 191-192, 449 N.E.2d 1295.
{¶40} In applying the subjective test, the Ohio Supreme Court identified a non-exhaustive list of factors to consider:
(1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity.
Id . at 192, 449 N.E.2d 1295.
{¶41} The trial court considered these factors in determining whether Appellant presented sufficient evidence for an entrapment instruction to be given. It determined all these factors were met and thus, the entrapment defense was not "relevant" and there was not "sufficient" evidence introduced of entrapment. 1/27/18 Trial Tr.
*972 392, 397-399. This determination is supported by the record.
{¶42} Padgett testified Appellant was the first person to give her Adderall. 1/27/18 Trial Tr. 353. During the second controlled purchase Padgett made this same statement to Appellant and he did not deny giving her Adderall intermittently when she worked for him. State's Exhibit 4 and 5. During the first controlled buy, Padgett talked to Appellant about the Pharmacy Board investigation into her writing the Percocet prescriptions. State's Exhibit 1, 2, 3. Appellant told Padgett to be truthful, but to not tell the investigator he had given her Adderall in the past. State's Exhibit 1, 2, 3.
{¶43} Furthermore, Padgett also testified that while she did not have any physical relationship with Appellant after she quit working for him, she did have contact with him. 1/27/18 Trial Tr. 314, 332-333. She testified Appellant sold her Adderall and Suboxone during the late summer 2016. 1/27/18 Trial Tr. 336, 353. The statements made by Appellant during the controlled buys insinuate there was contact between Appellant and Padgett prior to the controlled buys. However, there was no clear statement by Appellant that he had previously sold her Adderall, Suboxone, or Percocet when she was not working for him; the statements only indicate there was communication between the two during that time.
{¶44} This evidence indicates previous involvement in criminal activity, as well as knowledge and access to contraband. Consequently, it does not appear there was error committed when the trial court refused to instruct on entrapment.
{¶45} Admittedly, the trial court in explaining its ruling did make statements that Appellant did not take the stand to dispute Padgett's testimony. 1/27/18 Trial Tr. 398. Appellant argues the trial court's statements appear to be a belief it was necessary for Appellant to testify.
{¶46} In looking at the entire explanation, the point the trial court was making was that the evidence submitted was uncontroverted. As aforementioned Padgett testified Appellant introduced her to Adderall by giving it to her when she worked for him. Statements made by Appellant during the controlled purchases indicated he did give Padgett Adderall intermittently while she was working for him. Padgett also testified she bought Adderall from Appellant when she was not working for him. Although the officer testified he did not know about her previous purchases, his lack of knowledge does not make her testimony conflict with his, rather it just demonstrates his lack of knowledge.
{¶47} The trial court correctly pointed out that Appellant produced no evidence supporting his lack of predisposition to commit the offense. See State v. Peyton , 12th Dist. No. CA2015-06-112, 2017-Ohio-243, 2017 WL 283401, ¶ 24-25 ; State v. Davis , 2016-Ohio-1166, 61 N.E.3d 650, ¶ 36 (12th Dist.) (Appellant had an affirmative duty to "adduce evidence supporting his lack of predisposition to commit the offense."). While it is true the evidence does suggest Appellant was in love with Padgett, that does not mean he was not predisposed to commit the offense and he was entrapped. The evidence submitted at trial indicates Adderall use was part of the relationship between Appellant and Padgett. Appellant presented no evidence supporting his position that he lacked predisposition to commit the offense.
{¶48} This assignment of error is meritless.
Fourth Assignment of Error
"The trial court erred by failing to advise the Defendant-Appellant at sentencing regarding the possible penalties that *973 could be imposed as a result of violating the terms and conditions of community control sanctions as required by law."
{¶49} Appellant argues the trial court failed to comply with R.C. 2929.19(B)(4). This statute provides:
If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.
R.C. 2929.19(B)(4).
{¶50} Appellant contends the trial court did not notify him that "if the conditions of the sanctions are violated, if the offender commits a violation of any law, or if the offender leaves this state without permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation."
{¶51} At sentencing, the trial court stated, "Now, in addition to all of this, this Court further rules that should he violate community control sanctions in any fashion, he will go to prison for one-and-a-half years." 2/8/18 Sentencing Tr. 7. In the judgment entry, the trial court advised, "Should Defendant violate Community Control Sanctions, he shall serve Eighteen (18) Months in the Penitentiary ." 2/8/18 J.E.
{¶52} The trial court's statements clearly indicate if Appellant violates any community control sanction he will serve 18 months in the penitentiary. However, in making this advisement, the trial court did not recite R.C. 2929.19(B)(4) word for word. For instance, the trial court did not state a violation of the law or leaving the state without permission would result in the 18 month prison term.
{¶53} The Ohio Supreme Court has previously discussed the prior version of R.C. 2929.19(B)(4). State v. Brooks , 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837. In Brooks , the Court looked at the language in R.C. 2929.19(B)(5), which is identical to the language in the current version of R.C. 2929.19(B)(4). The Court indicated that the R.C. 2929.19 notification must be given at the sentencing hearing and discussed the language the trial court should use. Id . at ¶ 15, 19-23. The focus of the language analysis was on notifying the offender of the specific prison term that would result from a violation of community control sanctions:
Having established that the statutory scheme envisions the sentencing hearing itself as the time when the notification must be given, we next consider what language the trial court should use. By choosing the word "specific" in R.C. 2929.19(B)(5) to describe the notification that a trial judge must give when sentencing an offender to community control, the General Assembly has made clear that the judge shall, in straightforward and affirmative language, inform the offender at the sentencing hearing that the trial court will impose a definite *974 term of imprisonment of a fixed number of months or years, such as "twelve months' incarceration," if the conditions are violated. To comply with the literal terms of the statute, the judge should not simply notify the offender that if the community control conditions are violated, he or she will receive "the maximum," or a range, such as "six to twelve months," or some other indefinite term, such as "up to 12 months." The judge is required to notify the offender of the "specific" term the offender faces for violating community control.
* * *
R.C. 2929.19(B)(5) notification is meant to put the offender on notice of the specific prison term he or she faces if a violation of the conditions occurs. However, from the trial court's perspective, the notice does little more than set a ceiling on the potential prison term, leaving the court with the discretion to impose a lesser term than the offender was notified of when a lesser term is appropriate.
Id . at ¶ 19, 23.
{¶54} The court then stated the notification of a specific prison term is a prerequisite for a later imposition of a prison term if a community control sanction violation occurs. Id . at ¶ 29.
{¶55} Considering the Ohio Supreme Court decision, the notification in this instance, which clearly sets forth a specific prison term, is compliant with the mandates of R.C. 2929.19(B)(4). Furthermore, it is noted the Eleventh Appellate District has concluded an R.C. 2929.14(B)(4) advisement stating, "if there was a sentence imposed in this particular situation, it will be a sentence of 36 months," was sufficient even though the trial court did not specifically advise the offender imprisonment could be imposed if the conditions of community control were violated, if the law was violated, or if the offender left the state without permission. State v. Payne , 11th Dist., 2015-Ohio-5073, 53 N.E.3d 872, ¶ 24, overruled on other grounds by State v. Thomas , 11th Dist., 2018-Ohio-1024, 109 N.E.3d 12, ¶ 20. The advisement in the case before us is more straight forward then the one in Payne ; here, the trial court clearly indicated if there was a violation of the terms of the community control the sentence would be 18 months.
{¶56} Consequently, since the trial court clearly indicated at the sentencing hearing and in the sentencing judgment entry the specific prison term and stated that prison term would be imposed for a violation of community control, the trial court complied with R.C. 2929.14(B)(4) and there is no error. This assignment of error is meritless.
Conclusion
{¶57} For the reasons set forth above, all four assignments of error lack merit. Appellant's convictions are affirmed.
Waite, J., concurs.
Bartlett, J., concurs.