[Cite as *State v. Jackson*, 2020-Ohio-1606.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108493 |
| v. | : | |
| TYMAINE JACKSON, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 23, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-632209-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Maxwell M. Martin, Assistant Prosecuting Attorney, *for appellee.*

Allison S. Breneman, *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant Tymaine Jackson ("Jackson") appeals from his multiple convictions in the shooting death of Sir Rell Sizemore ("Sizemore"). Finding no merit to the appeal, we affirm.

{¶ 2} Jackson was indicted with aggravated murder, murder, five counts of felonious assault, three counts of attempted murder, and discharge of a firearm on or near prohibited premises. All counts contained one- and three-year firearm specifications. The matter proceeded to a jury trial at which the following evidence was presented.

{¶ 3} On the evening of August 11, 2018, Jackson, who was 19 years old, and his girlfriend went to a convenience store where it was common for people to congregate. Jackson's girlfriend stayed in the car off to one side of the parking lot while Jackson walked around the large and crowded parking lot talking to friends.

{¶ 4} On the same evening, 28-year old Sizemore was driven by his sister, Sherron, to the same convenience store. His brother, Sir Robert, his nephew, William, and a friend were also in the car. Sizemore and William got out of the car to buy cigarettes, but Sizemore stayed outside of the store; Sizemore was not allowed in the store because he was not wearing a shirt. William went inside the store while Sizemore walked around the parking lot listening to music and dancing.

{¶ 5} Sizemore was in the middle of the parking lot when Jackson walked up to him; Jackson testified he was just trying to pass Sizemore on the way back to his girlfriend's car. Sizemore tried to shake or "dap" Jackson's hand; Jackson declined. Sir Robert saw Jackson approach his brother and Sir Robert testified he got a "tight, nervous feeling."

{¶ 6} According to Jackson, Sizemore saw that Jackson had a gun in his shorts and told Jackson that "they had guns too," meaning the people Sizemore was with also carried firearms. Jackson claimed that Sizemore was being aggressive towards him and Jackson feared for his safety.

{¶ 7} William testified that he went into the convenience store and when he exited the store he saw a man approach his uncle; the man walked from the crowd and up to Sizemore. Sizemore tried to greet the man and give him a handshake. William observed the man and Sizemore talking but could not hear what they were saying. William was standing near his aunt's car when he saw Jackson shoot Sizemore. He tried to get to Sizemore but was unable to because Jackson started firing his weapon at him.

{¶ 8} Jackson testified to the following version of events. He walked over to talk to a group of friends who were at the store while his girlfriend waited in the car. On his way back to his girlfriend's car, he crossed paths with Sizemore, stating that he walked past Sizemore because this was the most direct way back to his vehicle. Jackson had a gun in the pocket of his basketball shorts and approached Sizemore with his hand in the pocket of his shorts. Sizemore noticed the gun in Jackson's waistband and told Jackson that his group had guns too. Sizemore was being aggressive, called him a derogatory slur, and he saw Sizemore reach into his own pocket for a gun. Jackson saw someone Sizemore was with get out of a car and thought that man was going to kill him. Then Sizemore punched Jackson. It was at this point Jackson pulled his gun out of his pocket and shot Sizemore. He

fled on foot with his girlfriend following in her car. Jackson turned himself in to police a few days later.

{¶ 9} According to the state, the surveillance video of the incident, which was played for the jury and entered into evidence, showed Jackson pulling his gun out of his pocket prior to Sizemore punching him. Immediately after Sizemore punched Jackson, Jackson raised his gun and shot Sizemore multiple times in rapid succession. Jackson then shot at William, who began to approach Sizemore only after Sizemore was shot.

{¶ 10} Forensic pathologist Todd Barr, M.D. ("Barr"), testified that Sizemore's cause of death was multiple gunshot wounds, including a close range gunshot wound to the chest that was in and of itself fatal. Sizemore had alcohol and cocaine in his system at the time of his death. Barr opined that Sizemore ingested cocaine more than a day prior to his death and was not under the influence of cocaine at the time of his death.

{¶ 11} Eight spent 9 mm cartridge cases were recovered at the crime scene. The firearm was never recovered.

{¶ 12} The state theorized that because Jackson approached Sizemore with a loaded gun already in hand and a round in the chamber, Jackson murdered Sizemore. Jackson claimed he acted in self-defense.

{¶ 13} The jury acquitted Jackson of aggravated murder but found him guilty of the lesser included offense of voluntary manslaughter, guilty of murder, guilty of three counts of felonious assault, and guilty of discharge of a firearm on or

near prohibited premises. The guilty verdicts included all firearm specifications. The trial court sentenced Jackson to 35 years to life in prison.

{¶ 14} It is from this conviction that Jackson now appeals, raising four assignments of error for review. The assignments of error will be discussed out of order for clarity.

> I: The jury found, against the manifest weight of the evidence, that the appellant committed the acts charged in the indictment and was not acting in self-defense.

> II: The evidence was not legally sufficient to sustain a guilty verdict.

> III: The state failed to meet their burden of proving that defendant did not act in self-defense.

> IV: The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines and erred by imposing consecutive sentences.

**Self-Defense**

{¶ 15} In the third assignment of error, Jackson contends that the state failed to meet its burden of proving that he acted in self-defense.

{¶ 16} On March 19, 2019, R.C. 2901.05 was amended to provide that the state must prove beyond a reasonable doubt that a defendant did not act in self-defense. *See* Am.Sub.H.B. No. 228. Prior to the amendment, R.C. 2901.05 placed the burden on the defendant to show that he or she acted in self-defense. *See* former R.C. 2901.05(A) ("The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."). At the time of Jackson's trial in

April 2019, the state bore the burden of proving beyond a reasonable doubt that he did not act in self-defense.

{¶ 17} R.C. 2901.05(B)(1) provides that a person is allowed to act in self-defense. If, at trial, there is evidence presented that tends to support that the accused person used the force in self-defense, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense. *Id.* When a defendant raises the claim of self-defense, the state bears the burden of proving beyond a reasonable doubt that the defendant was at (1) fault in creating the situation giving rise to the affray; (2) that the defendant did not have a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of force and; (3) that the defendant must not have violated any duty to retreat or avoid danger. These elements remain cumulative.

{¶ 18} Jackson contends he was merely crossing the gas station parking lot to return to his vehicle when he was approached by Sizemore, who punched him after a brief conversation. Jackson argues that Sizemore warned him that "he and his people" had guns, acted aggressively towards him, and called him a derogatory name. At this point, Jackson testified, Sizemore put his hand in his pocket reaching for a weapon and Sizemore's group started walking towards him. Jackson believed Sizemore and his friends had weapons on them and when Sizemore punched him, he reacted to defend himself by shooting Sizemore. Jackson argued he shot at Sherron's car because Sizemore's group were rushing

towards him. During the entire encounter, Jackson "believ[ed] he was going to be shot and killed."

{¶ 19} We first consider who was at fault in creating the situation giving rise to the affray. Although Jackson argues that Sizemore was the aggressor, Jackson walked towards Sizemore, who tried to shake his hand. Jackson rebuffed Sizemore's advance and was immediately hostile towards the other man. On cross-examination, Jackson admitted:

> State: The fact of the matter is you escalated this situation? You made it into the violent confrontation it was, didn't you?

> Defendant: Yes.

(T. 733). Thus, we find Jackson was at fault in creating the situation giving rise to the shooting.

{¶ 20} The evidence further showed that Jackson did not have a bona fide belief that he was in imminent danger of death or great bodily harm or that his only means of escape from such danger was in the use of deadly force. The record shows that Sizemore was standing in the parking lot, waiting for his nephew to purchase cigarettes, when Jackson approached him with his gun ready. Jackson could have easily avoided Sizemore, but instead walked up to him, with his hand on his gun that was in his pocket. Jackson said he thought Sizemore had a gun, but Sizemore was shirtless, wearing low hanging jeans and underwear with a visible waistband. Witnesses testified that Sizemore, and the rest of the group, were unarmed.

{¶ 21} Sizemore, who by all accounts was dancing and having a good time, tried to shake Jackson's hand. Jackson refused Sizemore's greeting, squared off to him, and spoke to him in an aggressive manner. A short argument ensued before Sizemore punched Jackson. Jackson admitted that Sizemore saw his gun before Sizemore punched Jackson; Sizemore knew Jackson was armed. Jackson responded to the punch by shooting Sizemore five times in rapid succession, hitting him four times. Even after Sizemore fell to the ground, Jackson continued to shoot him. Thus, Jackson also failed to meet his duty to retreat. There is no indication that Jackson was unable to avoid the situation. He could have avoided Sizemore altogether by choosing a different route back to his girlfriend's car. He also could have turned or backed away from Sizemore at any point during their encounter. Instead, he admittedly escalated the encounter into a violent encounter that ended up with him shooting Sizemore and causing his death.

{¶ 22} In light of the above, we find that the state met its burden. The third assignment of error is overruled.

**Sufficiency of the Evidence**

{¶ 23} In the second assignment of error, Jackson contends that the evidence was insufficient to sustain his convictions for the sole reason that the state did not prove that he acted in self-defense.

{¶ 24} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. *Id.*

{¶ 25} Jackson was convicted of committing murder pursuant to R.C. 2903.02(B), voluntary manslaughter pursuant to R.C. 2903.03, felonious assault pursuant to R.C. 2903.11(A)(1) and (A)(2); and discharge of a firearm on or near prohibited premises pursuant to R.C. 2923.162(A)(3). Jackson argues that the evidence did not support his convictions because he acted in self-defense.

{¶ 26} Jackson's sufficiency argument based on his asserted self-defense claim has no merit. When reviewing a claim by a defendant that evidence supports his or her claim of self-defense, the manifest-weight standard is the proper standard of review because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself or herself from culpability. *State v. Colon*, 8th Dist. Cuyahoga No. 106031, 2018-Ohio-1507, ¶ 16. A sufficiency review, on the other hand, is applied to the substantive elements of the crime as state law defines them. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, Jackson's reliance on his self-defense testimony is not relevant to the analysis of whether there was sufficient evidence to support the substantive elements of murder, voluntary manslaughter, felonious assault, and discharge of a firearm on or near prohibited premises.

{¶ 27} We find evidence in the record that supports the jury's verdict. It is undisputed that Jackson approached Sizemore after talking to a group of friends. The two exchanged words. Sizemore punched Jackson and Jackson shot Sizemore instead of retreating. Jackson shot at Sizemore five times, hitting him four times,

and killing him. Jackson then shot at Sizemore's family, hitting the car in which they were sitting.

{¶ 28} The second assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶ 29} In the first assignment of error, Jackson argues that his convictions are against the manifest weight of the evidence. Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Metz*, 8th Dist. Cuyahoga Nos. 107212, 107246, 107259, 107261, 2019-Ohio-4054, ¶ 70 citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st

Dist.1983). Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most '"exceptional case in which the evidence weighs heavily against the conviction."' *Thompkins* at *id.*, quoting *Martin* at *id.*

{¶ 30} Jackson asserts his convictions are against the manifest weight of the evidence because he acted in self-defense. According to his testimony, he feared for his life and only shot Sizemore after Sizemore punched him and Sizemore's family members charged him.

{¶ 31} Ultimately, the jury had to decide whether to believe the account of the incident given at trial by the state's witnesses or by Jackson. That is, it was within the province of the jury to resolve the conflicts in the testimony about the confrontation between Jackson and Sizemore, and to find that Jackson did not act in self-defense. In resolving this conflict, the jury had the opportunity to view the video of the incident. The jury also could assess Jackson's motivation to lie about his conduct. In view of its verdict, the jury did not believe fully Jackson's account, but they also acquitted him of the most serious charge, aggravated murder, and of other charges. Upon reviewing the entire record, we find that the jury's resolution of the competing testimony and evidence was not against the manifest weight of the evidence. This not an exceptional case in which the evidence weighs heavily against the conviction.

{¶ 32} In light of the above, the first assignment of error is overruled.

**Sentencing**

{¶ 33} In the fourth assignment of error, Jackson contends that the trial court erred in sentencing him to a sentence of 35 years to life in prison. He argues that the trial court abused its discretion by failing to properly weigh the seriousness and recidivism factors set forth in R.C. 2929.12, as well as failing to properly consider the purposes and principles of the felony sentencing guideline before imposing a 35-year-to-life sentence. He also argues that the record does not support the imposition of consecutive sentences.

{¶ 34} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. In *State v. Gwynne*, 2019-Ohio-4761, 158 Ohio St.3d 279, the Ohio Supreme Court held that R.C. 2929.11 and 2929.12 apply only to individual sentences; R.C. 2953.08(G)(2)(a) and 2929.14(C) set forth the exclusive means of appellate review of consecutive sentences. *Id.* at ¶ 16-17.

{¶ 35} R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See also State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne*, ¶ 16.

{¶ 36} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *Bonnell* at ¶ 16, 23. However, after determining

the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 37} A review of the record shows that the trial court complied with R.C. 2929.14(C)(4) by making the required statutory findings. The court found, both orally and in its judgment entry, that consecutive sentences were necessary to protect the public or to punish Jackson and that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger that he posed to the public. Lastly, the court found that Jackson's history of criminal conduct

demonstrated that consecutive sentences were necessary to protect the public from future crime by him. The trial court emphasized that there was no connection between Jackson and Sizemore. The trial court called the case the "worst case of murder that I've seen" and said that Jackson "slaughtered" Sizemore for no reason other than Jackson was "looking for someone to kill."

{¶ 38} Upon review of the record, we do not clearly and convincingly find that the record does not support the trial court's findings relative to its imposition of consecutive sentences.

{¶ 39} The fourth assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

SEAN C. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR