[Cite as *State v. Italiano*, 2021-Ohio-1283.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

NICHOLAS ITALIANO,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MA 0095**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 18 CR 899

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor and *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee

*Atty. James S. Gentile* and *Atty. Ronald D. Yarwood*, 42 North Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated: March 31, 2021

WAITE, J.

{¶1} Appellant Nicholas Italiano appeals from a judgment of the Mahoning County Court of Common Pleas sentencing him to prison after a jury convicted him on one count of felonious assault with an accompanying firearm specification. For the following reasons, the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} The following facts were presented at the trial. On September 1, 2018, Myeshia Traylor ("Traylor") went to the Sami Quik Stop at the corner of Market Street and Midlothian Boulevard in Youngstown. When Traylor pulled into the parking lot she noticed a red pickup truck parked "longways," or horizontally across the front parking spaces rather than vertically in a parking spot. (6/10/19 Tr., p. 247.) She waited for the truck to move before she pulled into a parking space. After parking, she asked the driver, identified as Appellant, what he was doing and the situation apparently quickly escalated. She called him "rude" and proceeded into the store. (6/10/19 Tr., p. 267.) Appellant testified that Traylor also called him "an ignorant a** motherf*cker." (6/10/19 Tr., p. 520.) Appellant responded, "f**k you, n*gg*r b*tch," and threatened to ram into her car. (6/10/19 Tr., p. 249.)

{¶3} Once in the store, Traylor watched Appellant move his truck and block her car in its parking space. She called her fiancé, Michael Collins ("Collins") because she was worried for her safety. Collins agreed to come to her aid, so Traylor waited in the store for him to arrive. While she waited she observed Appellant pacing back and forth

Case No. 19 MA 0095

outside of his truck even though there was nothing to prevent Appellant from leaving the scene. Appellant testified that he remained in the parking lot to clear up the "misunderstanding" with Traylor. (6/10/19 Tr., p. 533.)

{¶4} Collins arrived a short time later with his friend, Keith Shaw (aka Keith Johnson.) Collins testified that neither he nor Shaw were carrying weapons. Collins confronted Appellant while Traylor waited in the store. She saw that Appellant had his right hand in his pocket during this confrontation. (6/10/19 Tr., p. 254.) The store manager, Thamer Abualganen, went out to speak to the pair and was followed out by Traylor. A few people who had been inside the store also began to gather around the scene. According to Collins, Appellant challenged Collins and Shaw to a fight. In an attempt to mediate the situation, Abualganen asked Appellant to apologize to Traylor. Appellant refused, saying "I ain't apologizing to that b*tch for s**t." (6/10/19 Tr., p. 298.) Offended by this comment, Collins testified that he punched Appellant and "jumped back in a defensive stance" because he thought Appellant was going to strike him. (6/10/19 Tr., p. 300.) Appellant testified that after he was hit he "blacked out" and was "dazed." (6/10/19 Tr., p. 498.) However, Collins and Abualganen both testified that they almost immediately heard a click and saw Appellant pull out a gun. Collins turned and fled. Abualganen testified that after Collins had begun to run and was only a short distance away Appellant shot Collins in the back. Appellant admitted that after he was hit he pulled out his gun and fired it at Collins. (6/10/19 Tr., p. 498.) According to Abualganen, Appellant then started pointing the gun at everyone in the parking lot. (6/10/19 Tr., pp. 354-357.) The crowd disbursed and Abualganen returned to the store.

Case No. 19 MA 0095

{¶5}   Collins continued to run until he realized he had been shot.  He then turned and walked toward his vehicle in order to travel to the hospital.  (6/10/19 Tr., p. 303.)  As he was crossing Market Street he heard a car engine revving and saw Appellant's truck accelerating toward him, so he jogged into the store parking lot.  (6/10/19 Tr., p. 306.)  Collins heard the truck enter the parking lot and head towards him, so he ducked between two cars.  (6/10/19 Tr., p. 306.)  Appellant then accelerated out of the parking lot on to Market Street and drove away.

{¶6}   After fleeing the scene, Appellant drove to the intersection of Erie Street and Hollywood, where he stopped and called 911 to inform the operator that he shot someone.  Once Appellant arrived at the police station, he admitted he shot Collins but alleged it was in self-defense.  Appellant informed police he had a concealed carry license permit.  Police reviewed the Sami Quik Stop security recording and then placed Appellant under arrest for felonious assault.  A .380 Ruger handgun was recovered from his person at the time of his arrest.

{¶7}   On October 4, 2018, Appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2)(D), a second-degree felony; an accompanying firearm specification in violation of R.C. 2903.11(A)(2)(D), a second-degree felony; and one count of attempted murder in violation of R.C. 2923.02 and R.C. 2903.02(A), a first-degree felony.  At the conclusion of a jury trial, Appellant was found guilty of felonious assault and the accompanying firearm specification.  Appellant was sentenced to four years in prison for felonious assault and three years for the firearm specification, to be served consecutively, for a total stated prison term of seven years.

{¶8}   Appellant filed this timely appeal.

## ASSIGNMENT OF ERROR NO. 1

APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN THE TRIAL COURT IMPROPERLY INCLUDED A FLIGHT INSTRUCTION IN THE JURY CHARGE. (Trial Transcript at 601.602, 672.673).

{¶9} In his first assignment of error Appellant argues the trial court erred when it instructed the jury regarding his consciousness of guilt by including a flight instruction in the jury charge. When trial counsel files a timely objection to jury instructions pursuant to Crim.R. 30, a reviewing court will not reverse the trial court's decision in the matter absent an abuse of discretion. *State v. Taylor,* 7th Dist. Mahoning No. 08 MA 122, 2010-Ohio-1551, ¶ 26, citing *State v. Wolons,* 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An abuse of discretion connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Yashphalt Seal Coating, LLC v. Giura*, 7th Dist. Mahoning No. 18 MA 0107, 2019-Ohio-4231, ¶ 14, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Generally, a trial court has broad discretion regarding jury instructions, but is required to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen,* 50 Ohio St.3d 206, 210, 553 N.E.2d 640 (1990).

{¶10} A flight instruction is considered within the context of the entire set of jury instructions. *State v. Price,* 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus. A jury instruction is proper when: (1) the instruction is relevant to the facts presented; (2) it provides the correct statement of the relevant law; and (3) the instruction

is not already covered in the general charge to the jury. *State v. Kovacic*, 11th Dist. Lake No. 2010-L-065, 2012-Ohio-219, ¶ 15.

**{¶11}** Here, the trial court instructed the jury:

Testimony has been admitted indicating that the defendant fled the scene. You are instructed that fleeing the scene alone does not raise a presumption of guilt. But it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support the defendant fleeing the scene, or if you find that some other motive prompted the defendant's conduct, or if you're unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.

However, if you find that the facts support that the defendant engaged in such conduct and you decide that the defendant was motivated by a consciousness of guilt, you may, but are not required to consider the evidence in deciding whether the defendant is guilty of the crime or crimes charged. You alone will determine what weight, if any, to give this evidence.

(6/10/19 Tr., pp. 672-673.)

**{¶12}** The Ohio Supreme Court has consistently held that the fact of the accused's flight is admissible as evidence of the accused's consciousness of guilt and, thus, of guilt itself. *State v. Eaton,* 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969), vacated on other grounds, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 750; holding reaffirmed by *State v. Williams,* 79 Ohio St.3d 1, 11, 679 N.E.2d 646 (1997). In this case, the evidence presented at trial showed that, after shooting Collins in the back as he was running from

the parking lot, Appellant got into his truck. Appellant revved his engine and proceeded to speed toward Collins as he walked back to his own vehicle so that he could seek medical treatment. When Collins jogged into a parking lot Appellant turned around and drove towards him again, causing Collins to duck between cars. Then Appellant fled from the scene in his truck. This evidence is enough to support a flight instruction. The testimony from several witnesses at trial established that Appellant shot Collins and then, after attempting to run him down with his vehicle, sped away from the scene.

{¶13} Appellant first contends that the flight instruction was not proper because he stopped only a short time later and a few blocks away and telephoned the police, and then waited for them to arrive. However, his call to the police came after he had already fled the scene. Appellant also attempts to characterize his leaving as necessary to protect his own safety, because he had been assaulted and feared that worse would follow. This is not borne out by the evidence at trial. The security video from the store was played at trial and is part of the record on appeal. It is undisputed that Collins struck Appellant first. However, Collins then turned and ran. Appellant proceeded to shoot Collins while he was fleeing and, for good measure, attempted to twice run Collins down before fleeing the scene. This does not comport with Appellant's assertion that he feared for his safety and left for his own protection. The instruction at issue is similar to one which has previously been upheld by this Court regarding flight as evidence of consciousness of guilt. *State v. Green,* 7th Dist. Mahoning No. 01 CA 54, 2003-Ohio-3074. The evidence here established Appellant fled the scene after shooting Collins and the instruction contained a caution to the jury that flight does not create a presumption of guilt, but can be considered as evidence of consciousness of guilt. The trial court did not abuse its

discretion in giving this instruction to the jury. Appellant's first assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE VERDICT FOR FELONIOUS ASSAULT, AND THE ACCOMPANYING GUILTY FINDING ON THE FIREARM SPECIFICATION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (Trial Transcript at 702).

{¶14} In his second assignment of error, Appellant contends his conviction for felonious assault and the accompanying firearm specification were against the manifest weight of the evidence. He contends the evidence reflects that he shot Collins in self-defense, out of a reasonable fear of imminent harm.

{¶15} Weight of the evidence focuses on "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A review of the manifest weight of the evidence focuses on the state's burden of persuasion and the believability of the evidence presented. *State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 34. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 484 N.E.2d 717 (1st Dist.1983).

{¶16} A reversal under a manifest weight review in a criminal matter should be granted only "in the exceptional case in which the evidence weighs heavily against the

conviction." *State v. Andric*, 7th Dist. Columbiana No. 06 CO 28, 2007-Ohio-6701, ¶ 19, citing *Martin* at 175. Determinations regarding witness credibility, conflicting testimony, and evidence weight "are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 995, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh all evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). When presented with two fairly reasonable perspectives regarding the evidence or with two conflicting versions of events, neither of which can be ruled out as unbelievable, we will not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶17}** Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2)(D). Self-defense is available as a defense to felonious assault. Previously, self-defense was an affirmative defense which placed the burden on the defendant to prove each element by a preponderance of the evidence. On March 28, 2019, a new law went into effect in Ohio placing the burden on the prosecutor, not the defendant, to prove the accused did not act in self-defense. Thus, the self-defense statute was amended to shift the burden of proof to the state to "prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." R.C. 2901.05(B)(1).

**{¶18}** There are two types of self-defense in Ohio: (1) self-defense against danger of bodily harm, or non-deadly force self-defense; and (2) self-defense against danger of death or great bodily harm, or deadly force self-defense. *Struthers v. Williams,* 7th Dist.

Case No. 19 MA 0095

Mahoning No. 07 MA 55, 2008-Ohio-6637, ¶ 13. When an accused raises self-defense, in order to convict on felonious assault the state now must prove beyond a reasonable doubt that the accused: (1) was at fault in creating the situation giving rise to the incident; (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of force; and (3) violated the duty to retreat or avoid danger. *State v. Jackson,* 8th Dist. Cuyahoga No. 108493, 2020-Ohio-1606, ¶ 17. Although the burden has shifted to the state, the elements remain cumulative. *Id.*

{¶19} Reviewing the first element, this incident began with an exchange that occurred between Appellant and Traylor in the parking lot. Traylor approached Appellant, who was blocking parking spaces, and a verbal altercation arose between the two parties. Once Traylor went into the store, Appellant moved his vehicle to block Traylor's car. Appellant chose to remain, although there was no physical obstruction preventing him from leaving and the contact with Traylor had concluded. Appellant testified that he remained to clear up a supposed "misunderstanding" with Traylor, the nature of which is unclear. He did not remain to apologize, as evidenced by his refusal to do so when asked by Abualganen. In fact, Appellant then further increased the tense nature of the situation by once again calling Traylor a "bitch" in front of Collins. It was only then that Collins struck Appellant. Based on this evidence, the state met its burden of proof beyond a reasonable doubt that Appellant was at fault for creating the situation which gave rise to the incident. While Traylor may have contributed to creating the situation with her initial comments to Appellant, once this initial verbal contact was clearly over, Appellant deliberately blocked Traylor's car and paced around outside of his truck, obviously waiting

for her to return to her vehicle. Appellant had ample time and opportunity to simply get into his truck and drive away, but did not. And when approached by the store manager, Appellant escalated the "war of words" for no apparent cause after being entreated to leave or at least apologize. This record reveals that Appellant's conduct created and escalated the situation.

{¶20} Regarding the second element, Appellant testified that after he was struck by Collins he was "dazed" from the hit and that he "blacked out." Somewhat unbelievably, in this allegedly semi-conscious state, Appellant immediately reached for his gun and shot Collins. However, Collins was clearly in the process of retreating from the scene and this is reinforced by the evidence that Appellant shot him in the back. This scenario also is evident in the surveillance video shown to the jury. The testimony from Abualganen corroborated that once Collins struck Appellant, Appellant removed his gun, cocked it and aimed at Collins, shooting him while he was retreating. Therefore, Appellant's assertion that he was in fear of imminent death or great bodily harm when he used deadly force is not borne out by any evidence at trial. Appellant followed up the shooting by trying, not once but twice, to run Collins over with his truck rather than retreating. Certainly if Appellant feared he was in imminent danger of great bodily harm or death he would not seek out further altercation with his supposed aggressor as an act of self-defense. Lastly, Appellant admitted that Collins did not pose an immediate threat to him when Collins arrived at the scene. (6/10/19 Tr., p. 542.) Appellant said he was not "physically" threatened, but felt "mentally" threatened. (6/10/19 Tr., pp. 543-544.) There was also no evidence that Collins or any of the bystanders in the parking lot had a gun to support any claim of imminent danger of death or great bodily harm, and none except Collins

approached Appellant or acted in any aggressive manner towards Appellant. The state met its burden on the second element.

**{¶21}** Regarding the third element, the state was required to establish that Appellant had ample opportunity to retreat to avoid any danger. Abualganen testified that at the time Appellant seemed "angry" and refused to leave when asked. Once Collins got there, Abualganen asked Appellant to apologize to Traylor in an attempt to defuse tensions. Instead, Appellant refused and called Traylor a bitch. (6/10/19 Tr., p. 255.) This did cause Collins to strike Appellant, but then Collins immediately turned and fled. Appellant did not, himself, retreat. Instead, he pulled out his gun and shot Collins in the back. (6/10/19 Tr., pp. 300-301.)

**{¶22}** After a review of the record, Appellant's conviction for felonious assault with the accompanying firearm specification was not against the manifest weight of the evidence. The state established beyond a reasonable doubt that Appellant did not act in self-defense. The jury was presented with two theories. The jury ultimately concluded the state's theory, supported by the testimony of several witnesses and a surveillance video, was more credible. The eyewitness testimony along with the physical evidence support a determination that a reasonable jury could have concluded beyond a reasonable doubt that Appellant did not act in self-defense in shooting Collins.

**{¶23}** Appellant's second assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

APPELLANT WAS DENIED HIS RIGHTS TO A FAIR TRIAL AND DUE PROCESS AS THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY AS TO SELFDEFENSE. (Trial Transcript at 676-678).

<u>Case No. 19 MA 0095</u>

**{¶24}** In his third assignment of error, Appellant contends the trial court committed plain error in instructing the jury on "non-deadly force," as this instruction rendered it impossible, as a matter of law, for the jury to find that he acted in self-defense. We note defense counsel did not specifically object that the self-defense instruction applied to only the use of non-deadly force. Pursuant to Crim.R. 52(B), in the absence of an objection, this Court may review plain errors or defects which affect a substantial right. Generally, however, notice of plain error under Crim.R. 52(B) must be taken with caution and only under exceptional circumstances, to prevent a manifest miscarriage of justice. *State v. Gardner,* 118 Ohio St.3d 420, 889 N.E.2d 995, 2008-Ohio-2787, ¶ 78. Hence, failure to object to an improper statement in a jury instruction constitutes a waiver on appeal unless, but for the error, the outcome of the trial clearly would have been different. *State v. Underwood,* 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), at syllabus.

**{¶25}** Here the trial court's jury instruction on self-defense reads:

> The defendant is allowed to use non-deadly force in self defense. Evidence was presented that tends to support a finding that the defendant used non-deadly force in self defense. The state must prove beyond a reasonable doubt that the defendant did not use non-deadly force in self defense. Self defense means, A, that the defendant was not at fault in creating the situation giving rise to the defendant shooting Michael Collins. And B, that the defendant had reasonable grounds to believe, and an honest belief, even if mistaken, that he was in eminent or immediate danger of harm.

(6/10/19 Tr., pp. 675-676.)

**{¶26}** "Deadly force" is defined as "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). Appellant fired a gun at Collins, an action which clearly carries a substantial risk of death. The trial court's instruction to the jury involved only the appropriate use of non-deadly force, and contained no language addressing the use of deadly force in a self-defense context. Appellant argues plain error in that this instruction completely prevented the jury from finding Appellant acted in self-defense since the evidence established he used deadly force. Again, when a defendant who uses deadly force asserts he or she acted in self-defense, in order to overcome this the state must prove beyond a reasonable doubt all of the following: (1) the defendant was at fault in creating the situation; (2) the defendant did not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of force; and (3) the defendant violated a duty to retreat or avoid danger. *Jackson,* ¶ 17. Appellant is correct in that the jury instruction, as given, required the jury to find that he used non-deadly force against Collins, in order to avail himself of this defense, when it was undisputed that Appellant used deadly force.

**{¶27}** Courts have found plain error when a trial court fails to properly instruct a jury on deadly rather than non-deadly force. *State v. Ward,* 168 Ohio App.3d 701, 3006-Ohio-4847, 861 N.E.2d 823 (4th Dist.). However, where the evidence establishes beyond a reasonable doubt that the defendant did not act in self-defense, the incomplete jury instruction is harmless error. Here, the jury was presented with substantial evidence on which to find beyond a reasonable doubt that Appellant did not act in self-defense. As discussed in the second assignment of error, Appellant was responsible for creating and

escalating the situation leading to the shooting of Collins: using rude and insulting language; failing and refusing to leave the parking lot, instead blocking in Traylor's car and waiting for her to reappear; and shooting a man he provoked into punching him while that man was fleeing. The state established that Appellant could not have had a bona fide fear of imminent great bodily harm or death as all of the testimony and evidence showed that Collins was fleeing from Appellant when Appellant shot him in the back. The record is very clear that Appellant could have retreated or avoided danger by simply leaving after his verbal altercation with Traylor ended or even after being struck while Collins was fleeing. The record shows Appellant responded to a non-deadly situation with the use of deadly force. Accordingly, Appellant cannot demonstrate that, but for the jury instruction error, the outcome of his trial would have clearly been different.

**{¶28}** Appellant's third assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 4</u>

THE TRIAL COURT ERRED AND DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS BY ALLOWING RACE TO BE A FACTOR IN THE CASE AND PERMITTING THE PROSECUTOR TO PRESENT TESTIMONY PREJUDICING APPELLANT. (Trial Transcript at 299).

**{¶29}** Appellant contends that the trial court erred in permitting the state to present race-based testimony in his trial. As he was not specifically charged for a hate crime, he claims this evidence constituted prejudice and denied him a fair trial. After Traylor testified that Appellant referred to her with the use of a racial slur, Collins testified about his encounter with Appellant. Appellant cites to the following direct testimony of the victim, Collins.

<u>Case No. 19 MA 0095</u>

[PROSECUTOR]: What provoked you [into punching Appellant]?

[COLLINS]: Well, the store man asked [Appellant] to apologize to my fianc[é] for the things he had said.

[PROSECUTOR]: Okay.

[COLLINS]: And so I said yeah, you know, that's the least you can do.

[PROSECUTOR]: All right.

[COLLINS]: He said [Appellant] said I ain't apologizing to that bitch for shit.

* * *

[PROSECUTOR]: Okay. Now, when he responds using that term how does that make you feel?

[COLLINS]: It made me feel he ought to be slapped.

[PROSECUTOR]: Were you offended?

[COLLINS]: I was definitely offended.

[PROSECUTOR]: Okay. Now, it's unfortunate that I'm going to have to ask the following questions. But I think it's important for the jury to understand. You are obviously African-American?

[COLLINS]: Yes.

Case No. 19 MA 0095

[PROSECUTOR]: And you have had to deal with a very, very racism [sic] in the country, and specifically within the city of Youngstown?

[DEFENSE COUNSEL]: Objection, Your Honor.

[COLLINS]: Yes.

[THE COURT]: Overruled.

[PROSECUTOR]: Now, I understand that there are certain terms that are highly offensive to different races. What is a specific term that you as an African-American find very offensive?

[COLLINS]: Being called a n****r by a white person.

[PROSECUTOR]: It is different, and it's kind of used jovial between two African-Americans, correct?

[COLLINS]: Yes. When you put the e-r on the end and it comes from a white person that makes it offensive.

[PROSECUTOR]: Okay. And that makes you feel a certain way, doesn't it?

[COLLINS]: Yeah, I mean, you know.

(6/10/19 Tr., pp. 298-299.)

Case No. 19 MA 0095

{¶30} Appellant concedes that "[t]here was nothing the trial court could do about Traylor telling the jury that Appellant called her a n****r," but that the latter testimony by Collins was hearsay and served only to portray Appellant as a racist. (Appellant's Brf., p. 17.) The state argues the statements were admissible under Evid.R. 801(D)(2)(a) as a party's own admission made by a party-opponent. The state also contends the testimony was necessary and relevant to establish whether Appellant acted in self-defense.

{¶31} Trial court decisions regarding the admissibility of evidence are reviewed under an abuse of discretion standard. *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032. Thus, an appellate court will not disturb a trial court's ruling on the admissibility of evidence absent a showing of abuse of discretion and material prejudice to the defendant. *State v. Green,* 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.).

{¶32} Evid.R. 801(D)(2)(a) relates to admissions by party-opponents and provides:

(D) Statements which are not hearsay. A statement is not hearsay if:

* * *

(2) Admission by party-opponent. The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity[.]

Evid.R. 801(D)(2)(a).

{¶33} Generally, testimony about a defendant's own prior statements is not hearsay when offered by the state pursuant to Evid.R. 801(D)(2)(a). Although Appellant

denied that he used a racial slur in referring to Traylor, both Traylor and Collins testified that Appellant called her a "n****r bitch." (6/10/19 Tr., p. 249.) Although the statements are racist and inflammatory in nature, that fact alone does not make them inadmissible as an exception to hearsay under Evid.R. 801(D)(2)(a). Collins' testimony regarding the significance of the use of a racial slur directed at his fiancé is not prejudicial to Appellant in this matter, as it speaks to Collins' experience and feeling regarding the use of the statement and explains why he struck Appellant. Of particular importance is the fact that Appellant concedes Traylor's testimony regarding Appellant's use of a racial slur was already before the jury. Thus, whether Appellant made the derogatory comment and the impact this may have had on the situation appears relevant as to what led to Collins' decision to strike Appellant, at the very least. Appellant also cannot demonstrate that Collins' testimony materially prejudiced him at trial. Appellant admits he shot Collins in the back. Whether he directed the slur at Traylor or not, the record is devoid of any facts that would allow a jury to find he was justified in the use of deadly force, here.

{¶34} Appellant's fourth assignment is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ERRED AND DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS BY ALLOWING RACE TO BE A FACTOR IN THE CASE AND PERMITTING THE PROSECUTOR TO PRESENT TESTIMONY PREJUDICING APPELLANT. (Trial Transcript at 299).

{¶35} Appellant argues cumulative errors occurred regarding the jury instructions and Collins' testimony, and that these collectively deprived him of a fair trial, warranting reversal. Under the doctrine of cumulative error, a conviction will be reversed when the

cumulative effect of error during a trial deprives a defendant of a fair trial even though each of the alleged instances of error do not individually constitute cause for reversal. *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987). An error-free, perfect trial does not exist, and is not guaranteed by the Constitution. *State v. Hill,* 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996). In order to find cumulative error, a record must contain multiple instances of harmless error. *State v. Austin,* 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185, ¶ 64. When an appellate court determines no error has occurred, the doctrine cannot apply. *State v. Lyons,* 7th Dist. Jefferson No. 16 JE 0008, 93 N.E.3d 139, 2017-Ohio-4385, ¶ 46. As we have found no error in three of Appellant's assignments and only harmless error in the remaining argument, Appellant's fifth assignment based on cumulative error clearly has no merit.

**{¶36}** Appellant has failed to show the trial court abused its discretion in giving a flight instruction and that any error with regard to the self-defense instruction is harmless. His convictions were not against the manifest weight of the evidence. Likewise, there was no error in admitting certain portions of the victim's testimony. Hence, Appellant cannot demonstrate cumulative error. For the foregoing reasons, all of Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.

Case No. 19 MA 0095

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**