[Cite as *State v. Sims*, 2021-Ohio-2334.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

LUCAS L. SIMS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 CO 0035**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2019-CR-10

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito Abruzzino*, Columbiana County Prosecutor and *Atty. Tammie Riley Jones*, Assistant Prosecuting Attorney, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee

*Atty. Wesley A. Johnston*, P.O. Box 6041, Youngstown, Ohio 44501, for Defendant-Appellant.

Dated: June 30, 2021

———————————

**WAITE, J.**

{¶1} Appellant Lucas L. Sims appeals the judgment of the Columbiana County Court of Common Pleas entered after a jury found him guilty of felonious assault and aggravated menacing. On appeal, Appellant argues the trial court erred when it failed to provide jury instructions on self-defense or a jury instruction on an inferior offense of aggravated assault. He also argues it was error to admit social media messages. Appellant also alleges ineffective assistance of counsel and that the verdict was against the manifest weight and sufficiency of the evidence. For the following reasons, Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} Appellant and the victim, Charlie Lewis ("Lewis"), had been friends for twenty years. On October 21, 2018, Appellant agreed to watch Lewis' 11 year old son for the evening while Lewis went on a date. Lewis returned to Appellant's home at approximately 10:00 p.m. that evening where he joined Appellant and Appellant's pregnant girlfriend, Linda McKinnon. Lewis' son and Appellant's son were playing video games in a bedroom while the three adults remained in the living room. All three were drinking alcohol and Appellant and McKinnon were also smoking marijuana.

{¶3} At some point, Appellant asked Lewis if he wanted to have sex with Appellant and his girlfriend. McKinnon said she was interested but Lewis declined. McKinnon said she was tired and eventually all three ended up in a bedroom together. McKinnon was lying on the bed and Appellant and Lewis were sitting on the bed. All three

remained fully clothed. Appellant left the room briefly to use the restroom and McKinnon told Lewis the three of them were going to have sex. Lewis testified that he, "told her that she was nuts and I smacked her on the butt and told her that it would not be a good idea." (8/20/19 Tr., p. 313.) Apparently, McKinnon began to fall asleep and Appellant testified that before he actually left for the restroom, he saw Lewis groping McKinnon. (8/20/19 Tr., p. 384.) Appellant testified that on his return from the restroom, McKinnon woke up and he heard her tell Lewis to stop touching her. (8/20/19 Tr., p. 384.) At that point Appellant hurried into the bedroom and began hitting Lewis, striking him in the face several times. As Lewis stood up, Appellant struck him in the ribs causing Lewis to fall to his knees. Appellant continued to strike Lewis in the ribs, puncturing a lung and rendering Lewis unable to easily breathe. (8/20/19 Tr., p. 315.) Once Appellant finally stopped his assault, Lewis retrieved his phone and tried to call for an ambulance, but Appellant took his phone. Appellant struck Lewis a few more times before Lewis was able to reach the bathroom. Appellant followed Lewis to the bathroom and pulled him back into the bedroom. (8/20/19 Tr., pp. 316-317.) Lewis was bleeding from his nose and eyes. At that point, the children ran out of the nearby bedroom and Lewis asked his son to call an ambulance. Appellant told the children to go back in the bedroom. When Lewis told Appellant he was going to vomit, Appellant let him leave the residence. Lewis made his way to a neighboring house where his daughter's aunt, Krista Pipes, resided. He knocked on her door and then collapsed on the front porch. Pipes testified that she called an ambulance and was worried that Lewis was going to die on her porch. (8/20/19 Tr., p. 199.) The ambulance transported Lewis to the East Liverpool City Hospital where he was interviewed by police officers before being transferred to a hospital in Youngstown. Lewis

Case No. 19 CO 0035

was treated for broken ribs, a punctured lung, a broken nose and bruising to his eyes, face and head. (8/20/19 Tr., pp. 319, 322.)

{¶4} After the incident, Appellant called Lewis multiple times to apologize and ask Lewis not to press charges against him. (8/20/19 Tr., p. 323.) McKinnon contacted Lewis on Facebook Messenger (a private messaging component of Facebook) telling him she was sorry for what had happened. (8/20/19 Tr., p. 324.) In December of 2018 Appellant used McKinnon's Facebook profile to send Lewis a message telling Lewis that he was going to kill him. (8/20/19 Tr., p. 325.) Appellant also sent audio messages through Facebook messenger threatening him. Lewis shared both the texts and audio messages with the police. (8/20/19 Tr., pp. 325-327.) In May of 2019 Lewis called police to his residence when he thought he heard someone entering his home because he remained concerned for his safety based on threats made to him by Appellant. (8/20/19 Tr., pp. 327-328.)

{¶5} On January 9, 2019, the Columbiana County Grand Jury returned a secret indictment against Appellant. Appellant was charged with one count of felonious assault in violation of R.C. 2903.11(A)(1), a second degree felony; and one count of aggravated menacing in violation of R.C. 2903.21(A), a first degree misdemeanor. A jury trial was held on August 19, 2019. The following day, the jury returned a verdict of guilty on both counts. That same day the trial court sentenced Appellant to seven years in prison on the felonious assault charge and 180 days for aggravated menacing, both to run concurrently, for a total stated prison term of seven years.

{¶6} Appellant filed this timely appeal.

ASSIGNMENT OF ERROR NO. 1

Case No. 19 CO 0035

The trial court abused its discretion when it refused to provide jury instruction for self-defense, in violation of Sim's [sic] right to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

{¶7} In his first assignment of error Appellant contends the trial court erred in failing to instruct the jury on self-defense. Appellee responds that the evidence presented at trial was legally insufficient to enable Appellant to raise self-defense and that, even if there was sufficient evidence, the incident in question occurred in October of 2018. Thus, the statutory amendment that shifted the burden of proof to the prosecution does not apply.

{¶8} Generally, jury instructions are matters left to the sound discretion of the trial court. *State v. Guster,* 66 Ohio St.2d 266, 271, 421 N.E,2d 157 (1981). When reviewing a trial court's decision not to instruct a jury in a certain manner, an appeals court applies an abuse of discretion standard. *State v. Lewis,* 7th Dist. Mahoning No. 07 MA 199, 2009-Ohio-5075, ¶ 36. An abuse of discretion connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Yashphalt Seal Coating, LLC v. Giura*, 7th Dist. Mahoning No. 18 MA 0107, 2019-Ohio-4231, ¶ 14, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The trial court must provide the jury with all relevant and necessary instructions in order for the jury to weigh the evidence and discharge their duty as finder of fact. *State v. Curtis,* 7th Dist. Belmont No. 18 BE 0007, 2019-Ohio-499, 129 N.E.3d 961. Moreover, witness credibility is within the jury's purview and determinations regarding conflicting testimony and weight of the evidence are "primarily for the trier of fact." *State v. Italiano,*

7th Dist. Mahoning No. 19 MA 0095, 2021-Ohio-1283, ¶ 15 quoting *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. However, a trial court is not required to give the jury an instruction requested by a defendant if the evidence offered at trial is "legally insufficient" to support the issue raised in the instruction. *State v. Barnd,* 85 Ohio App.3d 254, 259, 619 N.E.2d 518, 521 (1993). Evidence is sufficient where the claimed defense raises a reasonable doubt of a defendant's guilt. *State v. Melchoir*, 56 Ohio St.2d 15, 20, 381 N.E.2d 195 (1978). Where the evidence constitutes "mere speculation," it is insufficient to raise the defense and the requested instruction is not warranted. *Id.*

**{¶9}** Self-defense, if proved, relieves the defendant of criminal liability for the force used. There are two types of self-defense in Ohio: (1) defense against danger of bodily harm, also known as non-deadly force self-defense; and (2) defense against danger of death or great bodily harm, or deadly force self-defense. *Struthers v. Williams,* 7th Dist. Mahoning No. 07 MA 55, 2008-Ohio-6637, ¶ 13. Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2)(D). Self-defense is available as a defense to felonious assault. Prior to March 28, 2019, self-defense was an affirmative defense which placed the burden on the defendant to prove each element by a preponderance of the evidence. On March 28, 2019, a new law went into effect in Ohio placing the burden on the prosecutor, not the defendant, to prove the accused did not act in self-defense. The self-defense statute, R.C. 2901.05, enacted as a result of Am.Sub.H.B. 228, was amended to shift the burden of proof to the state to "prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense

of another, or defense of that person's residence, as the case may be." R.C. 2901.05(B)(1).

**{¶10}** Under the amended statute, when an accused raises self-defense, in order to convict an accused of felonious assault, the state must prove beyond a reasonable doubt that the accused: (1) was at fault in creating the situation giving rise to the incident; (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of force; and (3) violated the duty to retreat or avoid danger. *Italiano* at ¶ 18, citing *State v. Jackson,* 8th Dist. Cuyahoga No. 108493, 2020-Ohio-1606, ¶ 17.

**{¶11}** Appellant argues that he acted in self-defense and in defense of McKinnon during this incident. The jury was presented with two different versions of the events. Appellant testified that he became seriously provoked after he saw Lewis grope McKinnon, provoked to such an extent that he feared for their safety and was required to defend himself and McKinnon. However, our review of the evidence presented at trial reveals no evidence of serious provocation by Lewis. First, Appellant invited Lewis into his home after he arrived to pick up his son. It was Appellant who asked Lewis if he wanted to engage in sexual intercourse with McKinnon. (8/20/19 Tr., p. 312.) After the three ended up in the bedroom, Appellant testified that he watched Lewis grope McKinnon but proceeded to leave the bedroom and use the restroom. As he returned, Appellant again saw Lewis groping McKinnon and heard her tell him to stop. At this point, Appellant entered the room and began his assault on Lewis. Appellant testified that he was now angry, and that it was necessary to defend McKinnon. However, according to Lewis, even when Lewis fell to his knees Appellant continued to assault him. Appellant also prevented

Lewis from using his phone to call 911.  Further, Lewis attempted to leave the bedroom after the assault began.  When he reached the bathroom Appellant pulled him back into the bedroom in order to continue the beating.  It was only when Lewis told him he was going to vomit that Appellant let Lewis leave the residence.  Appellant maintains that it was not until his return from the restroom and again seeing Lewis grope McKinnon that it became necessary to defend her, despite acknowledging that he had already noticed Lewis touching McKinnon prior to leaving the bedroom.  The jury clearly did not find Appellant credible and did not believe his version of events.  Regardless of this obvious credibility problem, the evidence as offered at trial is legally insufficient to support self-defense.  Appellant admitted that he saw Lewis groping McKinnon and yet left the room.  It was not until his return that he began to assault Lewis.  His assault continued well beyond mere "protection" of McKinnon and was prolonged by Appellant when he prevented Lewis from leaving and pulled him back into the fray.  This record reveals that Appellant's conduct did not comport with a claim that he was in fear of bodily harm to himself or others, required for a self-defense claim.

{¶12}  Appellant argues that after he raised self-defense, the state was required to prove he was not acting in self-defense beyond a reasonable doubt under the amended statutory burden.  The question of whether the trial court was required to give a self-defense jury instruction consistent with the changes to H.B. 228 is a legal issue that we review *de novo*.  *State v. Kormos*, 2012-Ohio-3128, 974 N.E.2d 725, ¶ 12 (12th Dist.).  It is clear from the record that there was insufficient evidence presented to raise the issue of self-defense under either the statute as it previously existed or as amended under H.B. 228.  Hence, the issue of burden-shifting in the instant matter is moot.  *Barnd* at 259.

{¶13} As the record reflects, Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

The trial court abused its discretion when it refused to provide jury instruction for aggravated assault in violation of Sim's [sic] right to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

{¶14} This assignment is closely related to the first assignment of error. Appellant contends here that the trial court erred when it did not instruct the jury on the inferior degree offense of aggravated assault.

{¶15} Again, trial courts are required to give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge their duty as the finder of fact. *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Although aggravated assault is an inferior degree offense of felonious assault, instruction on an inferior offense is only required when the evidence presented at trial reasonably supports both an acquittal on the crime charged and a conviction on the inferior offense. *State v. Carter,* 89 Ohio St.3d 593, 600, 734 N.E.2d 345 (2000). In determining whether to include an instruction on an inferior offense, the trial court must consider both the state's and the defense's evidence, and must view that evidence in a light most favorable to the defendant. *State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37. The court must find sufficient evidence to allow a jury to

reasonably reject the greater offense and find the defendant guilty on the inferior degree offense. *State v. Noor,* 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 84.

{¶16} The jury found Appellant guilty of second-degree felonious assault. The relevant statute provides:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(D)(1)(a) Whoever violates this section is guilty of felonious assault. Except as otherwise provided in this division or division (D)(1)(b) of this section, felonious assault is a felony of the second degree.

R.C. 2903.11(A)(1)(D).

{¶17} R.C. 2903.12(A) defines aggravated assault:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

(1) cause serious physical harm to another or to another's unborn;

(2) cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in [R.C. 2923.11].

**{¶18}** Aggravated assault is an inferior degree offense of felonious assault because it contains elements identical to those that define felonious assault except for the additional mitigating element of serious provocation. *State v. Deem,* 40 Ohio St.3d 205, 210, 533 N.E.2d 294 (1988). If the defendant presents sufficient evidence of serious provocation at trial, an instruction on aggravated assault must be given. *Id.* A serious provocation is defined as extreme stress reasonably sufficient to incite the defendant into using deadly force. *State v. Holcomb,* 7th Dist. Columbiana No. 18 CO 0039, 2020-Ohio-561, ¶ 30, citing *Deem,* paragraph five of the syllabus.

**{¶19}** Appellant alleges here that he was seriously provoked by Lewis. A review of the evidence presented at trial does not support this contention. Appellant testified that he watched Lewis grope McKinnon but left the room anyway. (8/20/19 Tr., p. 384.) Thus, he testified that he was not provoked enough to remain in the room and defend McKinnon. Only as he returned and again saw Lewis touch McKinnon and heard her tell him to stop did he enter and begin assaulting Lewis. (8/20/19 Tr., p. 384.) Captain Darin Morgan of the East Liverpool Police Department testified that Appellant called him on October 23, 2018 because he heard that Captain Morgan wanted to speak with him. Captain Morgan invited Appellant to the station to be interviewed, but Appellant kept talking:

> At one point in that conversation he told me that he was standing in the hallway, watching to see what was going to happen in the bedroom. He said he wanted to see if [McKinnon] was going to tell him to stop or don't.

(8/20/19 Tr., p. 271.) McKinnon was also interviewed by Captain Morgan on October 24, 2018. She reported that Lewis had inappropriately touched her over her clothing. He

testified, "[f]rom the conversation I had with her, she didn't think that was a big deal." (8/20/19 Tr., p. 278.) The only evidence to support provocation was offered by Appellant, who also alleged that Lewis hit him first:

Mad? I was provoked. I was angry. I was mad he was touching her. I was mad he hit me. I was protecting her, protecting myself and I was in my own household. Why wouldn't I do that? Anyone of you guys would be mad and upset.

(8/20/19 Tr., pp. 385-386.)

{¶20} The evidence presented at trial is not sufficient to establish that Appellant was seriously provoked by Lewis' conduct. McKinnon testified that Lewis' behavior was not significant. Appellant himself testified that he watched Lewis touch McKinnon but left the room without being provoked. In the absence of sufficient evidence to support serious provocation, the trial court was not required to instruct the jury on the inferior offense of aggravated assault.

{¶21} Appellant' second assignment of error is without merit and is overruled.

### ASSIGNMENT OF ERROR NO. 3

The trial court erred when it admitted irrelevant and prejudicial evidence, denying Sims [sic] right to due process and a fair trial.

{¶22} Appellant contends the evidence of other acts presented through use of Facebook Messenger evidence should have been excluded. Appellant claims this evidence was irrelevant under Evid.R. 401, was not admitted for a proper purpose under

Evid.R. 404(B), and any probative value of this evidence was outweighed by the danger of unfair prejudice, requiring exclusion under Evid.R. 403(A). The state argues the evidence was relevant, was admitted for a proper purpose, and the probative value of the evidence was not outweighed by any unfair prejudice. Both the Facebook Messenger text and audio messages were admitted into evidence at trial were sent to Lewis in early December of 2018, just over a month after the incident at issue occurred.

**{¶23}** A trial court's decision on the admission of evidence is reviewed for an abuse of discretion. *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. R.C. 2945.59 governs "other acts" evidence and provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶24}** Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

Case No. 19 CO 0035

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). This list of exceptions is not exclusive. *Morris,* ¶ 18. The rule does not exclude evidence which is intrinsic to the crime for which the defendant is being tried. *State v. Smith,* 49 Ohio St.3d 137, 139-140, 551 N.E.2d 190 (1990). Other acts are admissible if "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." *State v. Roe,* 41 Ohio St.3d 18, 23, 535 N.E.2d 1351 (1990), citing *State v. Wilkinson,* 64 Ohio St.2d 308, 317, 415 N.E.2d 261 (1980), quoting *United States v. Turner,* 423 F.2d 481, 483-484 (7th Cir.1970). Thus, a court can admit evidence of other acts which may comprise the immediate background of, and are inextricably linked to, an act which forms the foundation of an offense charged. *State v. Lowe,* 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994).

**{¶25}** Before addressing the merits of this assignment, however, we note that Appellant did not preserve this issue for appeal. At trial, the state submitted Exhibit 3 which were Facebook Messenger text messages. The state also submitted Exhibit 4, which were Facebook Messenger audio messages. Appellant contends that trial counsel objected to the Facebook Messenger evidence. However, a review of the record reveals defense counsel stated it had "no objection" when the state moved for admission of Exhibit 3 and Exhibit 4. (8/20/19 Tr., pp. 283, 286.) Therefore, the trial court admitted both Exhibits without objection. After admission, however, the state began to play the audio messages. It was at this point that defense counsel asked to approach the bench:

COUNSEL: Your honor, approach the bench?

THE COURT: Okay. You may.

PROSECUTION: Before I play those?

COUNSEL: Uh-huh.

THE COURT: Is this on the record, Mr. Wise?

* * *

COUNSEL: My client is in a position to plead guilty to the aggravated menacing. He would like to plead guilty to that outside the hearing of the jury.

PROSECUTION: Your Honor, we've come this far. I would like to continue here. And I think this dovetails into the nature of the relationship that's been ongoing from the time of this incident.

THE COURT: All right. Well, if he wishes to plead guilty, we'll take that up during a recess or a break. I'm not going to interrupt the state's case at this point to allow it. Thank you. So, Ms. Jones, you can continue.

COUNSEL: At this point then I'm going to object to the playing of these.

THE COURT: Thank you. So noted.

(8/20/19 Tr., pp. 286-287.)

Case No. 19 CO 0035

**{¶26}** Not only did Appellant fail to object to the actual admission of the Facebook exhibits at trial, he also failed to challenge the admissibility of the evidence when the issue was raised in the state's motion in limine. The state wanted to offer into evidence threatening Facebook messages Appellant directed toward a second male trying to contact McKinnon. These second messages were included in discovery along with the messages directed to Lewis. The trial court heard arguments outside of the jury prior to trial on the state's motion. At that hearing defense counsel objected to the Facebook messages regarding the second male but did not raise any objection to the Facebook messages that were directed toward Lewis. The trial court denied the state's motion and did not allow the admission of the Facebook messages directed toward the second individual. Thus, the state argues that Appellant never objected to the Facebook messages at the hearing on the motion in limine nor during trial, and only challenged the admissibility of the evidence after admission, immediately before they were played for the jury.

**{¶27}** It is well-settled that in order to avoid waiver, a party must object to the alleged trial error, preserving the matter for appellate review. *State v. Murphy,* 91 Ohio St.3d 516, 532, 747 N.E.2d 765 (2001). Accordingly, we review the instant challenge to the admission of the evidence under a plain error standard. *State v. Jones,* 91 Ohio St.3d 335, 347, 744 N.E.2d 1163 (2001). Pursuant to Crim.R. 52(B), in the absence of an objection, we may review plain errors or defects which affect a substantial right. "Generally, however, notice of plain error under Crim.R. 52(B) must be taken with caution and only under exceptional circumstances, to prevent a miscarriage of justice." *Italiano*, *supra*, at ¶ 24.

**{¶28}** Appellant contends the Facebook Messenger evidence is irrelevant and does not satisfy a permissible purpose, claiming that prior to their admission defense counsel objected. However, as noted above, defense counsel stated on the record that he had no objection. Appellant's counsel raised no issue with this evidence until the moment when the already admitted audio messages were to be played for the jury. Even then, there was no actual objection lodged. Instead, defense counsel announced that Appellant was ready to plead guilty to the aggravated menacing charge, apparently in an attempt to avoid having the messages played for the jury. The trial court ruled that Appellant could enter a plea during recess, but that the state's case was not going to be interrupted by a partial plea. The audio messages were then played for the jury. Appellant left three audio messages for Lewis which were extremely explicit and threatening. The first was largely inaudible. In the second, Appellant accuses Lewis of having contact with McKinnon and says "I'm gonna kill your f**kin little b*tch-ass." In the third message, Appellant again threatens Lewis, saying "[j]ust wait I'm gonna kill you[.]" (State's Exhibit 4.)

**{¶29}** At trial, Captain Morgan testified that he could identify Appellant's voice on the messages and that "the girl" referred-to was McKinnon. He also testified that Lewis was frightened and had acknowledged that "the girl" referred to was McKinnon. Lewis was worried that "something bad was going to happen to him." (8/19/19 Tr., p. 288.)

**{¶30}** The threshold question in other acts evidence is whether the evidence is relevant. *State v. Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 24; Evid.R. 401. The question of relevance in light of Evid.R. 404(B) involves two inquiries: (1) whether the proffered evidence is relevant for the particular purpose for which it is

offered; and (2) whether it is relevant to an issue that is actually in dispute. *Hartman,* ¶ 26-27. Here Appellant concedes that the Facebook messages were relevant to the aggravated menacing charge. He argues, however, that once Appellant agreed to enter a guilty plea on the aggravated menacing charge, the evidence was no longer relevant. However, Appellant had not actually entered a guilty plea at the point at which the messages were played for the jury, and defense counsel had already stated for the record that the defense had no objection to the admission of the messages. Therefore, the charge of aggravated menacing was still before the jury and the matter was still in dispute.

{¶31} Appellant was charged with aggravated menacing under R.C. 2903.21(A), which provides:

No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶32} The threatening messages highlight the menacing nature of Appellant's attitude towards Lewis and his intent to cause Lewis to believe he would cause additional

serious physical harm. It supports motive and background, as Lewis informed police of the ongoing threats from Appellant and, according to other testimony, Lewis actually was afraid that Appellant was going to again harm him after the initial assault.

**{¶33}** Finally, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, or of confusing the issues, or misleading the jury. While the audio messages were certainly prejudicial to Appellant insofar as they called into question his assertion that he assaulted Lewis in self-defense, the evidence was not unfairly prejudicial.

**{¶34}** Accordingly, Appellant's third assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 4</u>

Sims' conviction was based on insufficient evidence as matter of law and was against manifest weight of the evidence.

**{¶35}** In his fourth assignment of error Appellant challenges both the weight and sufficiency of the evidence.

**{¶36}** "Weight of the evidence focuses on 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " (Emphasis deleted.) *Thompkins,* at 387. A review of the manifest weight of the evidence focuses on the state's burden of persuasion and the believability of the evidence presented. *State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 34. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the

jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 484 N.E.2d 717 (1st Dist.1983).

**{¶37}** A reversal under a manifest weight review in a criminal matter should be granted only "in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Andric*, 7th Dist. Columbiana No. 06 CO 28, 2007-Ohio-6701, ¶ 19, citing *Martin* at 175. Determinations regarding witness credibility, conflicting testimony, and the weight to give the evidence "are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 995, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh all evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). When presented with two fairly reasonable versions of the evidence or with two conflicting stories of the events, neither of which can be ruled out as unbelievable, we will not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶38}** Sufficiency of the evidence is a question of law relating to the legal adequacy of the evidence. *State v. Saffell,* 7th Dist. No. 19 JE 0021, 2020-Ohio-7022, ¶ 10, citing *Thompkins* at 386. This standard is used to determine whether the case may go to the jury or whether the evidence is sufficient, as a matter of law, to support the jury verdict. *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In determining whether a judgment is supported by sufficient evidence, this Court's inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶39} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1) which provides, "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn[.]"

{¶40} R.C. 2901.01(A)(5) defines "serious physical harm" and reads:

(5) "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶41} According to Appellant the only evidence of injury was Captain Morgan's testimony that "he saw a black eye and some marks on Lewis on the day of the incident" and Lewis' testimony about his injuries. (Appellant's Brf., p. 4.) Appellant contends that,

Case No. 19 CO 0035

because the state did not present expert physician testimony regarding the extent of Lewis' injuries and whether the injury was serious, there was insufficient evidence to send the matter to a jury on the felonious assault charge.

**{¶42}** "Where injuries to the victim are serious enough to cause him or her to seek medical treatment, a jury may reasonably infer that the force exerted on the victim caused serious physical injury as defined by R.C. 2901.01(A)(5)." *State v. Wilson,* 8th Dist. No. 77115, 2000 WL 1369868, *5. (Citations omitted.)

**{¶43}** Contrary to Appellant' assertion, the record is replete with evidence of the serious nature of Lewis' injuries. The state presented testimony from multiple witnesses regarding the extent of these injuries. Pipes testified that she answered her door to find Lewis laying on her front porch covered in blood and having difficulty breathing. (8/19/19 Tr., pp. 198-199). She was afraid he would die. Responding Officer Steven Adkins testified that he arrived on the scene and viewed Lewis in the ambulance. He followed the ambulance to East Liverpool City Hospital. He testified that he was personally familiar with Lewis, but due to the extent of Lewis' facial injuries, Officer Adkins could not recognize him. (8/19/19 Tr., p. 220). The state also submitted into evidence multiple photographs of Lewis that Adkins had taken at the hospital the day after the incident which showed multiple facial injuries, including: a black eye, a flattened, swollen nose; and a bruised ear. (8/19/19 Tr., pp. 223-225.) Other photographs included depictions of Lewis' bloody clothing and of Lewis' hands, which showed no abrasions or bruises, indicating that he was not combative during the altercation. (8/19/19 Tr., pp. 225-226). Adkins also testified that Lewis was struggling to breathe and he was concerned that Lewis might not survive his injuries. (8/19/19 Tr., pp. 228-229). Captain Morgan interviewed Lewis at

home the day after the incident once Lewis had been released from the hospital. Lewis told Captain Morgan that he had suffered a punctured lung, broken nose and bruising of his head. (8/19/19 Tr., pp. 262-263). He also testified that he continued to have trouble breathing and sore ribs for several months after the incident. (8/19/19 Tr., p. 323). Finally, Lewis testified as to his injuries, including a broken nose, broken ribs and punctured lungs, as well as a split eye and multiple head bruises. (8/20/19 Tr., pp. 316, 322.)

**{¶44}** In addition to testimony, the state presented Lewis' medical records obtained by Captain Morgan from the treating hospitals. The records were consistent with all of the witness testimony. Appellant contends that without medical expert testimony regarding the injuries, there was insufficient evidence Lewis sustained serious physical injury. Appellant cites no authority that requires expert testimony on serious physical harm. This is because the state need not present expert medical testimony to establish the element of serious physical harm. "Proof of 'serious physical harm' does not require expert medical testimony; rather, it is an element, like any other, that the state must prove beyond a reasonable doubt." *State v. Brown,* 5th Dist. No. 2018CA00120, 2019-Ohio-3486, ¶ 29. (Citations omitted.)

**{¶45}** This record reveals the witness testimony and medical records constitute compelling evidence of the extent and nature of the serious physical harm sustained by Lewis. Viewing the probative evidence and any inferences to be drawn from this evidence in a light most favorable to the state, the record reflects that any rational trier of fact could have found proof of each element of felonious assault beyond a reasonable doubt, and sufficient evidence was presented to support Appellant's convictions.

**{¶46}** After review of the entire record, we must conclude that the verdict was supported by sufficient evidence and was not against the manifest weight of the evidence. The jury did not lose its way and create such a manifest miscarriage of justice to warrant a reversal or a new trial.

**{¶47}** Appellant' fourth assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 5

Sims' [sic] was denied his right to effective assistance of counsel at his trial.

**{¶48}** The test for ineffective assistance of counsel is two-part: whether trial counsel's performance was deficient and, if so, whether the deficiency resulted in prejudice. *State v. White*, 7th Dist. Jefferson No. 13 JE 33, 2014-Ohio-4153, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 107. In order to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Lyons*, 7th Dist. Belmont No. 14 BE 28, 2015-Ohio-3325, ¶ 11, citing *Strickland* at 694. The appellant must affirmatively prove the alleged prejudice occurred. *Id.* at 693.

**{¶49}** As both are necessary, if one prong of the *Strickland* test is not met, an appellate court need not address the remaining prong. *Id.* at 697. The appellant bears the burden of proof on the issue of counsel's effectiveness and, in Ohio, a licensed attorney is presumed competent. *State v. Carter*, 7th Dist. Columbiana No. 2000-CO-32,

2001 WL 741571 (June 29, 2001), citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

**{¶50}** When a claim for ineffective assistance of counsel is made based on failure to file an objection or a motion, the appellant must demonstrate that the objection or motion would have had a reasonable probability of success. If the objection or motion would not have been successful, then the appellant cannot prevail on an ineffective assistance of counsel claim. *State v. Adkins,* 161 Ohio App.3d 114, 2005-Ohio-2577, ¶ 14 (4th Dist.).

**{¶51}** Appellant raises two issues regarding ineffective assistance of trial counsel. First, he contends trial counsel was ineffective for failing to review discovery evidence with Appellant. Immediately prior to trial, the trial court addressed a number of issues outside the presence of the jury. Toward the end of the hearing, Appellant requested to speak, and asked if he could hire a different lawyer because trial counsel had not shared all of the evidence with Appellant and had only interviewed a key witness once. Defense counsel stated that the matter had been continued several times because of new discovery obtained and that he had, in fact, reviewed evidentiary materials with Appellant. (8/19/19 Tr., p. 7.) He also stated that he had interviewed both McKinnon and Lewis in preparation for trial. (8/19/19 Tr., p. 7.) The prosecution also added that several discovery items were marked "counsel only," which prohibited trial counsel from sharing those items with Appellant. (8/19/19 Tr., p. 10.) This record reveals no deficiencies of counsel as to these matters.

**{¶52}** The second issue raised by Appellant is trial counsel's failure to present expert testimony regarding the extent of Lewis' injuries. Trial counsel is not ineffective by

failing to call an expert and relying instead on cross-examination. *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 66. Trial counsel's decision to forego expert testimony is considered a trial tactic which requires deference to counsel's judgment. *State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). The state did not present medical expert testimony but relied primarily upon witness testimony. Failure to call an expert to impeach an expert called by the state has not been found to be ineffective assistance, so failure to call an expert when the state did not cannot be ineffective. Also, the evidence of Lewis' injuries was overwhelming, and multiple witnesses corroborated each other's testimony, further establishing the degree of Lewis' injuries.

**{¶53}** We conclude Appellant has not shown deficient performance by trial counsel. Additionally, Appellant has not demonstrated any prejudice or a reasonable probability the result would have been different if a defense expert had been utilized.

**{¶54}** Appellant's fifth assignment of error is without merit and is overruled.

**{¶55}** Based on the foregoing, all of Appellant's assignments of error are without merit and the judgment of the trial court is hereby affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

Case No. 19 CO 0035

[Cite as *State v. Sims*, 2021-Ohio-2334.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**